UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KREATIVE POWER, LLC,

        Plaintiff,

     v.

MONOPRICE, INC.,

        Defendant.

Case No. 14-cv-02991-SI

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 31

On February 13, 2015, the Court held a hearing on defendant's motion for summary judgment of noninfringement of plaintiff's '097 utility patent; noninfringement and invalidity of plaintiff's D'215 design patent; and noninfringement of plaintiff's copyright. For the reasons set forth below, the Court GRANTS the motion.

**BACKGROUND**

Plaintiff Kreative Power, LLC ("Kreative") and defendant Monoprice, Inc. ("Monoprice") are both in the consumer electronics industry, and offer electrical power outlet and surge protector devices as part of their product lines. Compl. ¶¶ 15-16. On July 12, 2005, Kreative filed a utility patent application for a surge protector that would later issue as U.S. Patent No. 7,112,097 ("the '097 patent"). *Id*. ¶ 13. Six years later, on April 19, 2011, Kreative filed a design patent application for a surge protector that issued as U.S. Patent No. D653,215 ("the D'215 patent"). *Id*. ¶ 14. Three years after that, on June 4, 2014, Kreative registered a visual work consisting of the packaging design to contain its surge protector device, POWRAMID, with the U.S. Copyright Office and secured Registration No. VA 0001908609 ("Kreative's copyright"). *Id*. ¶¶ 17-18.

    Kreative filed this action on June 26, 2014, asserting claims for direct and indirect

United States District Court
Northern District of California

infringement of the '097 and D'215 patents, infringement of Kreative's copyright, and unfair competition. *Id.* ¶¶ 25-59. Monoprice answered on July 23, 2014, denying all material allegations and seeking declaratory relief on Kreative's allegations. Dkt. 11. Monoprice also requested declaratory judgment that the D'215 patent is invalid. Ans. ¶¶ 10-12. The parties' claims relating to unfair competition were dismissed by stipulated order. Dkt. 35. In the Joint Case Management Statement filed on October 10, 2014, Monoprice stated that several of the disputed issues were legal, not factual, in nature and appropriate for early determination without significant fact discovery. Dkt 24, 8:21-24. Monoprice also proposed an early dispositive motion for summary judgment limited to the legal issues regarding the asserted intellectual property rights raised by Kreative. *Id.* 9:6-9. Monoprice stated that such a motion would not require significant discovery and would be filed by January 30, 2015. *Id.*

On December 9, 2014, Kreative served requests for production, requests for admission, and interrogatories. Opp. 3:14-16. Monoprice served written responses on January 12, 2015. *Id.* As of January 20, 2015, Monoprice had not initiated any discovery or sought any depositions. *Id.* 3:26-27. The parties have yet to engage in any substantive claim construction for the '097 patent claim and were scheduled to exchange preliminary claim constructions and extrinsic evidence on January 26, 2015. *Id.* 3:27-28. Monoprice now moves for summary judgment of noninfringement regarding the '097 patent, the D'215 patent, and Kreative's copyright; Monoprice also moves for summary judgment of invalidity of the D'215 patent. Dkt. 31.

## LEGAL STANDARD

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1075 (9th Cir. 2011); *see* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial.

United States District Court
Northern District of California

2

1    The moving party need only demonstrate to the Court that there is an absence of evidence to

2    support the non-moving party's case. *Id*. at 325.

3        Once the moving party has met its burden, the burden shifts to the non-moving party to

4    "set out 'specific facts showing a genuine issue for trial.'" *Id*. at 324 (quoting then-Fed. R. Civ. P.

5    56(e)). To carry this burden, the non-moving party must "do more than simply show that there is

6    some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

7    *Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be

8    insufficient; there must be evidence on which the jury could reasonably find for the [non-moving

9    party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

10       In deciding a summary judgment motion, the court must view the evidence in the light

11    most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255.

12    "Credibility determinations, the weighing of the evidence, and the drawing of legitimate

13    inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for

14    summary judgment." *Id*. However, conclusory, speculative testimony in affidavits and moving

15    papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill*

16    *Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties

17    present must be admissible. Fed. R. Civ. P. 56(c)(2).

18

19                                 **DISCUSSION**

20       Monoprice argues that its sole accused product, the 6 Outlet Desktop Hub ("Monoprice

21    Hub"), does not infringe the '097 patent, the design claimed by the D'215 patent, or the Kreative

22    copyright as a matter of law. Motion 1:8-18. Monoprice also argues that the D'215 patent is

23    invalid as a matter of law because the design is functional and/or anticipated by the '097 patent

24    and Kreative's prior public use. *Id.* In response, Kreative contends that Monoprice's motion is

25    premature, and should be denied without prejudice to refiling after the Court has construed the

26    '097 patent claim terms at issue. Opp. 6:3-6. Alternatively, if the Court declines to find

27    Monoprice's motion premature, Kreative maintains that material disputed facts exist which

28    preclude an order of summary judgment at this time. *Id.* 7:10-12.

United States District Court
Northern District of California

## I.        Infringement of the '097 Patent

Summary judgment of noninfringement involves a two-step process.  First, the patent claims are construed to determine their scope, and second, a determination is made as to whether the properly construed claims read on the accused product.  *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999) (citations omitted).  To infringe, the accused product must embody each claim limitation, either literally or equivalently.  *Sofamor Danek Grp., Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1220 (Fed. Cir. 1996).  The accused infringer seeking summary judgment of noninfringment may meet its burden to demonstrate the absence of a genuine issue of material fact either by (1) providing evidence that would preclude a finding of infringement, or (2) showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case.  *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).  Summary judgment of noninfringment may only be granted if, "after viewing the alleged facts in the light most favorable to the nonmovant and drawing all justifiable inferences in the nonmovant's favor, there is no genuine issue whether the accused device is encompassed by the patent claims."  *Id.*

### A.        Literal Infringement of the '097 Patent

Literal infringement exists when every limitation recited in the patent claim is found in the accused product, i.e., when the properly construed claim reads on the accused device exactly. *Strattec Sec. Corp. v. Gen. Auto. Specialty Co.*, 126 F.3d 1411, 1418 (Fed. Cir. 1997).  As an initial matter, Kreative argues that Monoprice's motion is premature because the parties have yet to exchange or submit to the Court their respective claim constructions for the '097 patent and because the Court has not yet conducted its claim construction or held a *Markman* hearing.  Opp. 5:9-11.   Kreative maintains that it "should not be forced to offer its claim construction prematurely," because "Kreative has not yet engaged any expert to assist with its claim construction and has thus not completed its claim construction fully."  Opp. 7:24-8:2; Wolf Decl. ¶ 5.

Monoprice disagrees, arguing that the lack of a prior claim construction hearing does not

preclude summary judgment.  Monoprice argues that the claim terms at issue, "circular" and "hingedly attached," are readily understandable and should be given their plain and ordinary meaning.  Reply 2:13-26.  Pointing to intrinsic evidence, Monoprice argues that the claim terms "circular" and "hingedly attached" are not explicitly defined by the '097 patent as having any definition other than their plain and ordinary meaning.  Motion 13-16.  In addition, Monoprice argues that the use of the terms "circular" and "hingedly attached" in the '097 patent is consistent with the plain and ordinary meaning of the terms.  *Id.*  At the hearing on this matter, counsel for Kreative provided its proposed claim constructions, construing the term "circular" to mean "like a circle, round" and construing the term "hingedly attached" to mean "where one member is utilized to join two other members."  Dkt. 47 at 9:22-3 ("hingedly attached"), 12:21-22 ("circular").

District courts have broad discretion to deny related discovery because claim construction is an issue of law.  *See Vivid Technologies, Inc. v. Am. Sci. & Eng'g, Inc*., 200 F.3d 795, 803 (Fed. Cir. 1999) ("We see no need for such a rule [requiring claim construction to be done no earlier than the end of discovery], for the stage at which the claims are construed may vary with the issues, their complexity, the potentially dispositive nature of the construction, and other considerations of the particular case.").  Here, the Court will evaluate whether the Monoprice Hub literally infringes the '097 patent by construing the claim terms "circular" and "hingedly attached" according to plaintiff's proposed claim constructions.

Monoprice does not literally infringe the '097 patent because not every limitation can be found in the Monoprice Hub.  The Monoprice Hub does not literally embody "a circular ground conductor, a circular neutral conductor, and a circular hot conductor" as required by Claim 1, when "circular" is construed according to Kreative's proposed construction to mean "like a circle, round."  Rather, the Monoprice Hub has only one conductor that resembles a "circular" geometric shape, while the two other conductors have no discernable geometric shape.  Ex. E at 102. Similarly, the Monoprice Hub does not literally embody a "hingedly attached" cover as required by Claim 1, when the term is construed according to Kreative's proposed construction to mean "where one member is utilized to join two other members," thus requiring three members.  Ex. E at 104.  Instead, the Monoprice Hub has a movable cover (a first member) that attaches to the base

(a second member) by a press fit, also known as an interference fit, friction fit, or a snap fit. Critically, the Monoprice Hub does not utilize any third member to join or attach the movable cover to the base; instead, the Monoprice Hub utilizes a press fit to attach the movable cover to the base, eliminating the need for any third member.

The Court concludes that when construing the claim terms according to Kreative's proposed constructions, there is no genuine issue as to whether the Monoprice Hub literally infringes the '097 patent; as a matter of law, it does not.

### B.    Equivalent Infringement of the '097 Patent and Prosecution History Estoppel

Kreative also asserts infringement of the '097 patent under the doctrine of equivalents. Infringement under the doctrine of equivalents requires the accused product to contain the equivalent of each claim limitation. *Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc.*, 305 F.3d 1303, 1315 (Fed. Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Nov. 1, 2002).  The element in the accused product is equivalent to the claim limitation if the differences between the two are "insubstantial" to a person having ordinary skill in the art.  *Id.*  However, *w*hen the original patent application once claimed the alleged equivalent in question, but the patentee made a narrowing claim amendment to avoid prior art and obtain the patent, prosecution history estoppel prevents the patentee from later attempting to recapture the equivalent that was forfeited during prosecution.  *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002) ("*Festo I*").   A presumption of prosecution history estoppel arises when a narrowing amendment is made to the claims during prosecution to secure the patent, whether or not the amendment was made to overcome prior art.  *Festo I*, 535 U.S. at 736-37; *see also Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.,* 517 F.3d 1364, 1381 (Fed. Cir. 2008) ("The fact that narrowing the claim . . . may not have been necessary to distinguish over the prior art does not change the analysis.").  Whether prosecution history estoppel applies is a question of law.  *Wang Labs., Inc. v. Mitsubishi Electronics Am., Inc.*, 103 F.3d 1571, 1578 (Fed. Cir. 1997)

The estoppel presumption can be overcome if the patent owner establishes any one of three exceptions: (1) the equivalent was unforeseeable at the time of the application; (2) the rationale

1    underlying the amendment bears no more than a tangential relation to the alleged equivalent; or

2    (3) there is some other reason suggesting that the patentee could not reasonably be expected to

3    have described the equivalent.  *Festo I*, 535 U.S. at 740-41.  The second exception, on which

4    Kreative relies, asks "whether the reason for the narrowing amendment was peripheral, or not

5    directly relevant, to the alleged equivalent."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki*

6    *Co.*, 344 F.3d 1359, 1369 (Fed. Cir. 2003) ("*Festo II*").  "[A]n amendment made to avoid prior art

7    that contains the equivalent is not tangential; it is central to allowance of the claim."  *Id.*  To rebut

8    the estoppel presumption under the tangential exception, the patentee's "objectively apparent

9    reason for the narrowing amendment" should be "discernible from the prosecution history."  *Id.*

10       Monoprice asserts that Kreative is barred by prosecution estoppel from alleging

11   infringement of the "hingedly attached" and "circular" limitations under the doctrine of

12   equivalents, because these limitations were added during prosecution to overcome the prior art.

13       A careful review of the prosecution history reveals that the "hingedly attached" cover was

14   a limitation in original dependent Claims 5 and 17 of the '097 patent, where Claims 5 and 17

15   depended upon and narrowed the scope of independent Claims 1 and 15, respectively.  Sganga

16   Decl., Ex. B at 65-70.  Original independent Claim 1 did not recite any limitation relating to a

17   cover; however, Claims 3-5, which depended upon and narrowed independent Claim 1, introduced

18   "a cover adapted to cover the power switch" (Claim 3), wherein "the cover is attached to the base"

19   (Claim 4), and wherein "the cover is hingedly attached to the base" (Claim 5).  *Id.* at 66.  Original

20   independent Claim 15 recited "a movable cover adapted to cover the power switch" and dependent

21   Claim 17 narrowed the scope of Claim 15 by adding the limitation "wherein the cover is hingedly

22   attached to the base."  *Id.* at 68.

23       The "circular" conductors limitation was originally presented in dependent Claim 12 in the

24   form of "a plurality of circular conductors," where Claim 12 depended upon and narrowed the

25   scope of independent Claim 1.[1]  *Id.* at 65-70.

26

27   _____

28   [1]  The limitation "a circular ground conductor, a circular neutral conductor, a circular hot conductor" did not appear in any original claim; it was only recited in the '097 patent specification.  Sganga Decl., Ex. B at 57:21-22, 62:21-23, 63:3-8.

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

During prosecution, the Patent Examiner rejected the limitation "a plurality of circular conductors" in original dependent Claim 12 using prior art U.S. Patent 1,597,437 ("De Reamer") that disclosed "a plurality of circular conductors." *Id.* at 35. The Patent Examiner also rejected original Claims 3-5, 15, and 17 using prior art De Reamer in combination with U.S. Patent 6,399,910 ("Crawford"), where Crawford disclosed the "movable cover adapted to cover hingedly (for claims 5 and 17) the power switch." *Id.* 37. In response to these rejections, Kreative canceled every claim except for independent Claim 15, which Kreative admitted was amended "to describe the invention in greater detail." *Id.* at 28. Kreative amended Claim 15, narrowing its scope to avoid the prior art, by adding limitations from several dependent claims including Claims 5 and 17 ("wherein the cover is hingedly attached to the base") and a limitation from the specification ("a circular ground conductor, a circular neutral conductor, and a circular hot conductor").

In the remarks filed with the amendments, Kreative argued "that claim 15, as amended distinguishes over the prior art." *Id.* Kreative stated that Claim 15 was amended to specify, among other newly added limitations, "the cover is hingedly attached to the base" and "the electrical system includes a circular ground conductor, a circular neutral conductor, and a circular hot conductor, within the base." *Id.* In sum, Kreative amended original Claim 15, narrowing its scope to avoid the prior art by adding several limitations, including "hingedly attached" cover and "a circular ground conductor, a circular neutral conductor, a circular hot conductor." In the '097 patent's Notice of Allowance, the Patent Examiner provided the reasons for the patentability of amended Claim 15:

> For claim 15, the requirement of several different [prior art] references for rejection of several different limitations, such as, the side surface having a portion of a cone, power switch emit light, switch having hinged cover, cover being transparent, having three pins etc, in combination with other limitations in the claim which is not found in the prior art reference of record.

*Id.* at 15.

Kreative now argues that "hingedly attached" and "circular conductors" were not surrendered as a result of the amendment because Kreative "did not change or narrow the concepts

United States District Court
Northern District of California

of 'hingedly attached' or 'circular conductor'; it effectively just reorganized and consolidated formerly dependent claims into one singular independent claim." Opp. 8:19-22. Kreative fails to acknowledge that a presumption of prosecution estoppel applies to *any* narrowing amendment, whether or not the amendment was made to overcome prior art. *See Regents of Univ. of Cal.,* 517 F.3d at 1381. While it is true that the concepts "hingedly attached" and "circular conductor" were present in the '097 patent specification and original dependent Claims 5, 12, and 17, the reorganization of those concepts into independent Claim 15 was a narrowing amendment that Kreative itself admitted was made to "distinguish[] over the prior art." Sganga Decl., Ex. B at 28.

Regarding the "hingedly attached" limitation, Kreative now alleges that the Monoprice Hub's movable cover that attaches with an interference fit is an equivalent to the "hingedly attached" cover, and that the amendment to add the "hingedly attached" limitation to Claim 15 "was totally unrelated" to the equivalent movable cover in question. Opp. at 10:5-6. However, Kreative's original independent Claim 15 recited a "movable cover," the very equivalent in question in the accused Monoprice Hub. Sganga Decl., Ex. B at 68. The "movable cover" limitation in original Claim 15 was rejected by prior art De Reamer in view of Crawford that disclosed a "movable cover." *Id.* In response to the prior art rejection, Kreative subsequently amended Claim 15 to narrow the claim by adding the limitation "wherein the cover is hingedly attached to the base." *Id.* at 37. Thus, the amendment to Claim 15 was made to avoid prior art De Reamer in view of Crawford that contained the equivalent "movable cover" in question. This narrowing amendment was not tangential — it was central to allowance of the claim. *See Festo II*, 344 F.3d at 1369.

Regarding the "circular" conductors limitation, Kreative alleges that the Monoprice Hub's conductors (one conductor that resembles a "circular" geometric shape and two conductors that have no discernable geometric shape) are equivalent because the amendment "was at most only very tangentially related [to the equivalents in question], clarifying a number but not the shape." Opp. at 10:6-7. Kreative's original dependent Claim 12 recited "a plurality of circular conductors." Sganga Decl., Ex. B at 67. Claim 12 was rejected by prior art De Reamer that disclosed "a plurality of circular conductors," and Claim 12 was subsequently canceled by

Kreative.  *Id.* at 28, 35-36.  In response to the De Reamer rejection, Kreative amended Claim 15 to add a limitation from the '097 specification: "a circular ground conductor, a circular neutral conductor, a circular hot conductor."  *Id.* at 28.  This amendment to add the "circular" conductors limitation to Claim 15 effectively narrowed the claim scope.  In the remarks accompanying the amendment, Kreative argued that "[t]his novel electrical system provides the power to the electrical receptacles of the base, within the uniquely designed conical base," and concluding that "the above amendments have placed this claim in condition for allowance."  *Id.*; *see Wang Labs*, 103 F.3d at 1578 ("Arguments and amendments made to secure allowance of a claim, especially those distinguishing prior art, presumably give rise to prosecution history estoppel.").  Kreative has failed to rebut the presumption of prosecution estoppel because it has not pointed to any objectively apparent reason for the narrowing amendments that is discernible from the prosecution history.  *See Festo II*, 344 F.3d at 1369.  Under prosecution history estoppel, Kreative cannot recapture the subject matter that it surrendered to receive the patent.  *See Wang Labs*, 103 F.3d at 1577-78.

The Court concludes that Kreative is barred from alleging infringement of equivalents due to prosecution history estoppel.  Kreative amended Claim 15 to narrow its scope and avoid prior art, thus a presumption of prosecution history estoppel applies.  Kreative has failed to rebut the presumption, therefore the Court finds there is no genuine issue as to whether the Monoprice Hub equivalently infringes the '097 patent.

## II.     Invalidity and Noninfringement of the D'215 Patent

Monoprice moves for summary judgment of noninfringement and invalidity of the D'215 patent asserted by Kreative.  Monoprice argues that an ordinary observer could not conclude that the Monoprice Hub infringes the D'215 patent as a matter of law.  Additionally, Monoprice argues that the D'215 is invalid as anticipated by prior art.

### A.     D'215 Patent Claim Construction

A design patent may be obtained for "any new, original and ornamental design for an

United States District Court
Northern District of California

article of manufacture." 35 U.S.C. § 171 (2013).  A patented design is claimed "as shown" by its drawings.  *L.A. Gear, Inc. v. Thom McAn Shoe Co*., 988 F.2d 1117, 1122 (Fed. Cir. 1993); *see also* 37 C.F.R. § 1.153 (2012) (requiring the design patent claim to be the ornamental design for the article as shown).  The Federal Circuit has established the "ordinary observer" test for design patent infringement and invalidity based on anticipation.  *See Int'l Seaway Trading Corp. v. Walgreens Corp*., 589 F.3d 1233, 1240 (Fed. Cir. 2009) ("[T]he ordinary observer test is the sole test for infringement, we now conclude that the ordinary observer test must logically be the sole test for anticipation as well.").  Under the ordinary observer test, an accused device infringes upon a design patent if "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665, 681 (Fed. Cir. 2008).  In applying the ordinary observer test, the focus should be on "the patented design in its entirety, as it is claimed."  *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010).  However, a patented design's scope is limited to only its ornamental aspects and does not include any functional elements of the claimed design. *Richardson v. Stanley Works, Inc*., 597 F.3d 1288, 1294 (Fed. Cir. 2010); *see also L.A. Gear*, 988 F.2d at 1123 ("The elements of the design may indeed serve a utilitarian purpose, but it is the ornamental aspect that is the basis of the design patent.").

The Federal Circuit has noted that a design patent claim construction is not approached in the same manner as a utility patent claim construction.  *See Egyptian Goddess*, 543 F.3d at 680 ("[A]s a general matter, [trial] courts should not treat the process of claim construction as requiring a detailed verbal description of the claimed design, as would typically be true in the case of utility patents.").  In general, "a design is better represented by an illustration 'than it could be by any description.'"  *Id.* at 679–80 (quoting *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)). Accordingly, the Federal Circuit has cautioned against "attempt[s] to 'construe' a design patent claim by providing a detailed verbal description of the claimed design."  *Id.* at 679.  The reasoning is that there are "risks entailed in such a description, such as the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole."  *Id.* at 680.

United States District Court
Northern District of California

1        Nonetheless, a court may find it helpful to point out various features of the claimed design

2   and prior art.  *Id.*  "[A] district court's decision regarding the level of detail to be used in

3   describing the claimed design is a matter within the court's discretion, and absent a showing of

4   prejudice, the court's decision to issue a relatively detailed claim construction will not be

5   reversible error."  *Id.*  The district court can "usefully guide the finder of fact" by addressing

6   issues that bear on the design patent claim scope, including "distinguishing between those features

7   of the claimed design that are ornamental and those that are purely functional."  *Id.* at 680 (citing

8   *OddzOn Prods., Inc. v. Just Toys, Inc*., 122 F.3d 1396, 1405 (Fed. Cir. 1997) ("Where a design

9   contains both functional and non-functional elements, the scope of the claim must be construed in

10  order to identify the non-functional aspects of the design as shown in the patent.")).  Here,

11  Monoprice argues that several aspects of the D'215 patent's claimed design are functional; thus

12  the Court finds it useful to distinguish between the ornamental and functional elements.

13       In design patents, the patentee is not required to claim the entire article of manufacture

14  shown in the drawings.  *See In re Zahn*, 617 F.2d 261, 268-69 (C.C.P.A. 1980).  The D'215 patent

15  specifically disclaims the "electrical cord and internal components of a port" as shown by the use

16  of broken lines.  *See* Sganga Decl., Ex. C at 81; *Contessa Food Products, Inc. v. Conagra, Inc.,*

17  282 F.3d 1370, 1378 (Fed. Cir. 2002) *abrogated on other grounds by Egyptian Goddess*, 543 F.3d

18  665 ("If features appearing in the figures are not desired to be claimed, the patentee is permitted to

19  show the features in broken lines to exclude those features from the claimed design, and the failure

20  to do so signals inclusion of the features in the claimed design."); *see also* Manual of Patent

21  Examining Procedure (MPEP) § 15.05 III (2014).  Therefore, it is the surge protector in its

22  entirety, as shown in the D'215 figures by solid boundary lines, which indicates the claimed

23  design from which to begin claim construction.

24       Although the D'215 patent claims the surge protector design in its entirety, "[w]here a

25  design contains both functional and non-functional elements, the scope of the claim must be

26  construed in order to identify the non-functional aspects of the design as shown in the patent."

27  *OddzOn Product*, 122 F.3d at 1405.  Aspects of a claimed design are considered functional if they

28  "are dictated by their functional purpose."  *Stanley Works*, 597 F.3d at 1294 (applying the

"dictated by function" standard during design patent claim construction in the context of a bench trial). Monoprice argues that the scope of the D'215 design patent's claim is limited because several aspects of the claimed design are functional, and therefore not protectable by a design patent. Motion at 3:8-16, 18:23-19:15; *see Stanley Works*, 597 F.3d at 1294 ("[W]hen the design also contains ornamental aspects, it is entitled to a design patent whose scope is limited to those aspects alone and does not extend to any functional elements of the claimed article.").

Specifically, Monoprice argues that the conical shape of the surge protector with six electrical receptacles is functional, not ornamental, because Kreative's '097 patent[2] and Kreative's advertising[3] both point out the utilitarian aspects of the conical design. *See Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed. Cir. 1997) (noting that in determining whether a design is functional, considerations include "whether there are any concomitant utility patents" and "whether the advertising touts particular features of the design as having specific utility."). Regarding the movable cover feature, Monoprice argues that the '097 patent discloses the movable cover as functional to protect the power switch and to serve as a hold-down point while removing a power supply from any of the six electrical receptacles.[4] Motion at 3:8-16. The Court agrees, finding that design of the conical surge protector and movable cover are dictated by their functional purpose.

The Court also finds that the USB port and its location are dictated by their functional aspects. The USB charging port is centered on the hub horizontally between two power

---

[2] *See* Sganga Decl., Ex. A at 1:41-51 ("It would be advantageous to have a power strip that is relatively compact and small in size yet provides several electrical receptacles each able to accommodate a body of a plug-in power supply with an integral plug.").

[3] *See* Dkt. 1, Ex. F at 30 ("With 6 power outlets on tap around the conical design power strip, each electrical device can be plugged in without worry of blocking other outlets . . . . this surge protector fits into small areas around the home and office as well as suitcases . . . ."); *id.* at 32 ("[T]he POWRAMID has a conical, solid, space saving shape that keeps all of the receptacles together and off of [sic] ground."); *id.*, Ex. G at 35-37 ("Circular design allows access to AC outlets from all angles" and "[t]he circular design allows for access from all angles and allows the use of AC adapters in adjacent power outlets.").

[4] *See* Sganga Decl., Ex. A at 2:7-10 ("Another objective is to provide a movable cover mounted on the top surface to prevent a power switch from being inadvertently turned on or off, and to provide a hold-down point for facilitating removal of the electrical plugs.").

United States District Court
Northern District of California

United States District Court
Northern District of California

receptacles, allowing the USB port to be accessible even when plug-in power devices occupy the two nearby three-prong power receptacles (for example, if the USB port were located on the hub directly below a three-prong power receptacle occupied by a power supply and its associated power cord, a user would be obstructed from readily accessing the USB port from above). *See* Sganga Decl., Ex. C at 82. There are a limited number of possible locations on the surge protector where the USB port could be placed without obstructing the use of the six power receptacles or the power switch with movable cover. *See id.* at 81-84; *see also L.A. Gear*, 988 F.2d at 1123 ("When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose."). The Court concludes that the claimed USB port location is not an ornamental design choice, rather its placement horizontally between two of the three-prong electrical outlets on the side of the hub is one of a very limited number of locations on the surge protector where the USB port can serve its function as a charging port.

Accordingly, the Court finds that the D'215 patent, after being construed to factor out the functional aspects and when considered in its entirety, claims the ornamental design for a surge protector having six recessed portions of a conical exterior surface between six electrical receptacles. The infringement and validity analysis will compare the Kreative's construed ornamental design, as shown in Figures 1-6, directly to the Monoprice Hub and prior art.

### B.   Noninfringement of the D'215 Patent

Design patent infringement is a question of fact that must be proven by a preponderance of the evidence and requires a showing that the accused design is substantially the same as the claimed design. *See L.A. Gear*, 988 F.2d at 1124. The ordinary observer test for infringement applies in this case, even where the Court identified numerous functional elements in the D'215 claimed design. *See Stanley Works*, 597 F.3d at 1295 (citing *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1372 (Fed.Cir.2006) (holding that while it is proper to factor out the functional aspects of various design elements, that discounting of functional elements must not convert the overall infringement test to an element-by-element comparison)).

Under the ordinary observer test, an accused device infringes upon a design patent if "an

ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Egyptian Goddess*, 543 F.3d at 681.   In evaluating infringement, the Court must ask whether "the deception that arises is a result of similarities in the overall design, not of similarities in ornamental features considered in isolation." *Amini Innovation*, 439 F.3d at 1371.

In addition to limiting the claimed design scope to only the ornamental aspects, the scope may also be limited by prior art, where any "limitation in scope of a design patent in light of prior art is necessarily folded into the infringement analysis." *Apple, Inc. v. Samsung Electronics Co*., No. 11-CV-01846-LHK, 2012 WL 3071477, at *3 (N.D. Cal. July 27, 2012).  The Federal Circuit has held that because the ordinary observer is knowledgeable about the prior art, the background prior art may provide a useful context in which to compare the claimed and accused designs. *Egyptian Goddess*, 543 F.3d at 677-78:

> Particularly in close cases, it can be difficult to answer the question whether one thing is like another without being given a frame of reference.  The context in which the claimed and accused designs are compared, i.e., the background prior art, provides such a frame of reference and is therefore often useful in the process of comparison.  Where the frame of reference consists of numerous similar prior art designs, those designs can highlight the distinctions between the claimed design and the accused design as viewed by the ordinary observer.

In other words, the ordinary observer test "necessarily involves a three-way (or multiple way) comparison between the patent-in-suit, the accused device, and the prior art references." *Apple*, 2012 WL 3071477, at *3.

Monoprice asserts that Kreative's '097 utility patent and Kreative's public display at a 2008 trade show both qualify as prior art.  The D'215 patent lists the '097 patent as one of the prior art "References Cited" during prosecution.  *Id.* at 81.  The '097 patent is considered prior art because it issued on September 26, 2006, over four years before the D'215 patent was filed on April 19, 2011.  *See* 35 U.S.C. § 102(b) (2002) ("A person shall be entitled to a patent unless – the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, *more than one year prior* to the date of the application for patent . . . ." (emphasis supplied)).  Kreative admits that the '097 patent discloses a "very similar

United States District Court
Northern District of California

15

power outlet, albeit *sans* USB port," and argues that "the *only* significant feature of the patented design over that in the prior art is the placement of the USB port." Opp. at 14:15-19, 15:19-21.

Kreative argues that when applying the "ordinary observer" test to compare the Monoprice device with Kreative's patented design, it is obvious that the Monoprice Hub infringes the patented design aspects of the Kreative design, specifically the USB port ornamentally placed on the hub of the power outlet. Opp. at 14:11-15. Kreative asserts that the ornamental USB location in the D'215 design and the Monoprice accused design are identical — aligned as centered vertically on the flatted band at the base of the cone and aligned as centered between two power receptacles. *Id.*; *see also* Sganga Decl., Ex. E at 105-06.

As the Court discussed above, the USB port location is functional; the design choice to locate the USB port on the hub is dictated by the USB port serving its function as an accessible charging port. In light of the '097 patent and after construing the design to factor out the functional aspects, the Court finds that the only ornamental distinction is the D'215 patent's more pronounced recessed portions of the conical exterior between the electrical receptacles that results in vertical walls on either side of each electrical receptacle. In contrast, the '097 patent discloses a smoother, fully conical exterior design.

However, Kreative also disclaimed these recessed portions of the conical exterior when it publicly displayed a version of the POWRAMID surge protector in 2008. Kreative's public use at the 2008 Consumer Electronics Show ("CES") is considered prior art because it occurred more than one year before the D'215 patent was filed. *See* 35 U.S.C. § 102(b); *In re Mann*, 861 F.2d 1581 (Fed. Cir. 1988) (holding the display of a wrought iron table at a trade show was prior public use). After construing the D'215 patent claim scope by factoring out the functional USB port and its location, the D'215 patent claims no ornamental aspects that differ from the prior art POWRAMID design disclosed at the 2008 CES trade show. *See* Sganga Decl., Ex. F at 120 (KP00025).

The Court finds that an ordinary observer, familiar with the prior art, could not find any ornamental similarity between the overall design claimed in the D'215 patent and the Monoprice Hub. Monoprice has shown that there is no genuine issue as to whether the Monoprice Hub is

encompassed by the Kreative design as claimed in the D'215 patent, when the claim is properly construed.  Therefore, the Court concludes that the Monoprice Hub does not infringe the D'215 patent as a matter of law.

### C.        Invalidity of the D'215 Patent Based on Anticipation

Design patents are presumed valid; invalidity must be established by clear and convincing evidence.  *See* 35 U.S.C. 282(a) ("A patent shall be presumed valid."); *L.A. Gear*, 988 F.2d at 1123 ("invalidity of a design patent must be established by clear and convincing evidence.").  The ordinary observer test also governs the anticipation analysis.  *See Int'l Seaway Trading*, 589 F.3d at 1240.  Under the ordinary observer test for anticipation, "a prior art design anticipates a claimed design if an ordinary observer, taking into account the prior art, would believe the patented design is the same as the prior art design."  *Blackberry Ltd. v. Typo Products LLC*, No. 14-CV-00023-WHO, 2014 WL 1318689, at *5 (N.D. Cal. Mar. 28, 2014).  Establishing invalidity based on prior art is more difficult if the asserted prior art was considered by the Patent Examiner and the patent issued over that art; conversely, "new evidence supporting an invalidity defense may 'carry more weight' in an infringement action than evidence previously considered by the Examiner."  *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2251, (2011) (citing *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984) *abrogated on other grounds by Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011)).

Monoprice argues that the D'215 patent is anticipated by the '097 patent and Kreative's public display of its POWRAMID surge protector design at a 2008 trade show.  Motion at 20:20-24; Sganga Decl., Ex. F at 120 (KP00025).  As the Court discussed above, the '097 patent and the 2008 trade show display both qualify as prior art.  The '097 patent was cited on the D'215 patent as a prior art reference; however, the POWRAMID design displayed at the 2008 trade show was not considered by the Patent Examiner.  *Id.*, Ex. C at 81.  Here, the POWRAMID design displayed at the 2008 trade show is identical in overall ornamental design to the D'215 claimed design, except that the 2008 design did not include the USB charging port.  *See* Sganga Decl., Ex. F at 120 (KP00025).  Again, the Court finds that the USB port and its location are functional; the design

17

1   choice to locate the USB port on the hub is dictated by the USB port serving its function as an

2   accessible charging port.

3        The Court finds that an ordinary observer, familiar with the prior art, would believe the

4   overall D'215 claimed design to be the same as the Kreative surge protector design displayed at

5   the 2008 trade show, after the D'215 is properly construed to factor out the functional USB port

6   and location.   Accordingly, the Court concludes that Monoprice has shown by clear and

7   convincing evidence that the D'215 patent is invalid as anticipated by the prior art POWRAMID

8   design publicly displayed at the 2008 trade show.

9

10  **III.     Noninfringement of the Kreative Copyright**

11       Kreative asserts that the clamshell design packing sold with the Monoprice Hub infringes

12  on the sculptural work protected by Kreative's copyright.   Opp. at 19:5-11.   To prevail on its

13  copyright infringement claim, Kreative must show that Monoprice copied the protected elements

14  from Kreative's copyright.  *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996).   Because direct

15  evidence of copying is unavailable in most cases, Kreative may establish copying by showing that

16  Monoprice had access to Kreative's work and that the two works are "substantially similar" in idea

17  and in expression of the idea.  *Id.* (citing *Apple Computer, Inc. v. Microsoft Corp*., 35 F.3d 1435,

18  1442 (9th Cir. 1994).

19       Kreative registered its product packaging as a sculptural work.   For sculptural works,

20  copyright protection does not extend to the utilitarian or functional aspects of a useful article.   The

21  design of a useful article is considered a sculptural work only if the design incorporates "features

22  that can be identified separately from, and are capable of existing independently of, the utilitarian

23  aspects of the article."   17 U.S.C. § 101 (2012).   The "substantial similarity" analysis must only

24  consider the similarity between protectable expressions, excluding any utilitarian aspects of useful

25  items that are not protectable.  *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 208 (9th

26  Cir. 1989).

27       Although the "substantial similarity" test involves a two-part extrinsic and intrinsic

28  analysis, only the extrinsic test is relevant for summary judgment.  *Id.*  To apply the extrinsic test

United States District Court
Northern District of California

18

to visual works, like the Kreative's sculptural work at issue, "a court looks to the similarity of the objective details in appearance." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002) (providing an exemplary list of relevant factors that may be considered in determining objective similarity in appearance, such as subject matter, shapes, colors, materials, and arrangement of the representation). If Kreative satisfies the extrinsic test by finding a substantial similarity of the objective details in appearance between Kreative's work and the accused product, summary judgment must be denied. *Smith*, 84 F.3d at 1218.

On June 4, 2014, Kreative registered a visual work and secured Registration No. VA 0001908609. Opp. ¶¶ 17-18. Kreative submitted a deposit specimen to the Copyright Office on May 15, 2014, to comply with the requirement for registration as a prerequisite to bringing a civil copyright infringement action. *See* 17 U.S.C. § 411(a) (2012) (requiring preregistration or registration of the copyright before any civil action for infringement of the copyright in any United States work shall be instituted); Sganga Decl. ¶ 4, Ex. D at 85. The deposit specimen comprised photographs of the complete packaging for Kreative's POWRAMID surge protector. *Id.* Each photograph included the clear plastic packaging, cardboard inserts with printed text, color, and graphics, and the Kreative surge protector inside the packaging. *Id.*

Kreative alleges that Monoprice's "clamshell design packaging sold with the Monoprice device" is substantially similar to Kreative's sculptural work protected by copyright. Opp. 19:10-28. Kreative concedes that its own product packaging's "form-fitted clamshell package" and label insert are "unprotected elements." *Id.* But Kreative asserts that the "protected expression" of its sculptural work is the "Custom Packaging" for its product, specifically the rectangular design with a curved section at the top of the packaging and the half cylinder shaped protrusion at the bottom of the packaging. *Id.* Kreative also asserts that its copyright does not claim any text or background design of the paper insert. Opp. at 20:3-8. Kreative argues that multiple questions of fact exist as to the similarity of the objective details in the appearances of its "protected expression" and the infringing Monoprice product packaging. *Id.*

At oral argument, Kreative cited to two cases in support of the position that portions of product packaging are eligible for copyright protection. Dkt. 47 at 38:5-8, 39:23-25; *see Albert E.*

United States District Court
Northern District of California

*Price, Inc. v. Metzner*, 574 F. Supp. 281 (E.D. Pa. 1983); *Nat'l Theme Prods., Inc. v. Jerry B. Beck, Inc*., 696 F. Supp. 1348 (S.D. Cal. 1988). However, these two cases are distinguishable from the case at hand. In *Albert E. Price*, the court granted plaintiff's motion for a preliminary injunction in a copyright infringement action where the plaintiff held a copyright certificate for a "Wood Duck Card Box." *Albert E. Price*, 574 F. Supp. 281. The "Wood Duck Card Box" was a wooden box, designed to hold two sets of playing cards and atop the box sat a particular type of duck, of a particular size, design and shape. *Id.* at 287. The court found the Price duck card box, as a whole, to be a protectable expression. *Id.* Here, there is no artistic element in Kreative's product packaging that can be compared to the wooden ornamental duck which served no functional purpose. Kreative's argument fails because the design of Kreative's plastic product packaging is strictly the result of its function — to contain and display the surge protector product.

*Nat'l Theme Prods.* is also distinguishable from the case at hand because the subject matter is nonanalogous to Kreative's product packaging. *Nat'l Theme Prod.*, 696 F. Supp. 1348. In *Nat'l Theme Prods.*, the court held that the plaintiff's "Tigress, Rabbit in Hat, Magic Dragon and Pampered Pup" costumes were copyrightable as applied art because the costume designs were independent of any functional considerations. *Id.* at 1354. The court found that the costumes' artistic features simply did not advance the utilitarian purpose as clothing or accessories. *Id.* Here, Kreative's product packaging design is totally dependent on its function — to contain and display the surge protector product.

Monoprice argues that Kreative cannot "parse out" self-selected portions of the plastic packaging because Kreative submitted photographs of the combined plastic packaging, printed insert, and product as its copyright deposit specimen. Reply at 11:8-20; Ex. D, 87-93. According to Monoprice, the parties' respective product packages should be compared for an "entire total concept and overall feel, including the inserts and products the packages contain." Reply at 11:8-14 (citing *Telebrands Corp. v. Del Labs., Inc*., 719 F.Supp.2d 283, 295-96 (S.D.N.Y. 2010) (granting motion to dismiss a packaging copyright infringement claim based on the lack of similarity to the entire total concept and overall feel)). Monoprice supports its position with a copyright treatise and persuasive case law holding that the deposit specimen serves an evidentiary

United States District Court
Northern District of California

1    function that becomes part of a record by which claims of infringement are tested.  *Tavory v. NTP,*

2    *Inc.*, 495 F. Supp. 2d 531, 536 (E.D. Va. 2007); Reply at 10:7-21.  Monoprice maintains that it is

3    Kreative's actual copyright registration application that sets the scope for the copyright protection.

4    *Express, LLC v. Fetish Grp., Inc.*, 424 F. Supp. 2d 1211, 1218 (C.D. Cal. 2006).  According to

5    Monoprice, there is no substantial similarity when the two packages with inserts are analyzed for

6    total concept and overall feel; therefore, Monoprice does not infringe the Kreative copyright as a

7    matter of law.  Reply at 12:8-18.  The Court finds that when the Kreative product packaging as a

8    whole (as submitted in the copyright deposit specimen) is compared to the Monoprice product

9    packaging, and after filtering out the functional aspects, there are differences between the

10   objective details in overall appearance, notably the text and graphics on the printed paper insert.

11          Even if Kreative was able to "parse out" portions of the packaging from the deposit

12   specimen, Monoprice asserts that these portions of the packaging by themselves are not eligible

13   for copyright protection because they are functional.   Monoprice argues that the "half cylinder

14   shaped protrusion at the bottom" of the packaging is functional: (1) to contain the power cord, and

15   (2) to form a larger surface area through which the printed cardboard insert is easily viewable,

16   similar to how a marquee at a theater makes graphics more prominent.  *Id.*; Motion at 24.  The

17   Court agrees that the "half cylinder shaped protrusion" is functional, and also finds the

18   "rectangular design with curved top section" to be functional, serving to contain and display the

19   surge protector product and printed insert.  The curved top section includes a slot for hanging the

20   POWRAMID product on a single prong peg fixture to display the product in a store at customer

21   eye level; thus, the curved top section functions to hang and display the product.  The Court

22   concludes that the "rectangular design with a curved top section" and the "half cylinder shaped

23   protrusion" are not eligible for copyright protection because the plastic packaging is functional,

24   serving to display and contain Kreative's POWRAMID surge protector.

25          The Court concludes that the Monoprice Hub clamshell design packaging does not infringe

26   on Kreative's copyright as a matter of law, because any similarity in appearance is due to

27   functional packaging that is not protected by Kreative's copyright.

28

1

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Monoprice's motion for summary judgment of noninfringement of the '097 patent, noninfringement and invalidity of the D'215 patent, and noninfringement of Kreative's copyright.

**IT IS SO ORDERED**.

Dated: March 3, 2015

_____
SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California