John B. Sganga, Jr. (Bar No. 116,211)
john.sganga@knobbe.com
Brian C. Claassen (Bar No. 253,627)
brian.claassen@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Defendant and
Counterclaimant MONOPRICE, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| KREATIVE POWER, LLC, a California limited liability company,<br><br>               Plaintiff and Counterdefendant,<br><br>     v.<br><br>MONOPRICE, INC., a California corporation,<br><br>            Defendant and Counterclaimant. | Civil Action No. 3:14-02991-SI<br><br>Judge Susan Illston<br><br>**MONOPRICE, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**<br><br>Date:  April 24, 2015<br>Time: 9:00 a.m.<br>Courtroom 10, 19th Floor |

# TABLE OF CONTENTS

**Page No.**

I.  INTRODUCTION ................................................................................................1

II. FACTUAL BACKGROUND ..............................................................................3

    A.  Monoprice Repeatedly Notified Kreative That its Claims Were Baseless...........................................................................................................3

    B.  Kreative's Asserted Intellectual Property Rights Are Limited in Scope.................................................................................................................4

        1.  Utility Patent: The '097 Patent .............................................................4

        2.  Design Patent: The '215 Patent ............................................................6

        3.  Kreative's Copyright ............................................................................7

    C.  Kreative Promotes the Functionality of its Design...........................................8

    D.  Monoprice's Accused Hub ...............................................................................9

III. RULE 11 REQUIREMENTS ............................................................................11

IV. KREATIVE HAD NO RULE 11 BASIS FOR ITS ACCUSATIONS .....................13

    A.  Kreative Had No Rule 11 Basis For Its Accusation of Infringement Of The '097 Patent.........................................................................................13

        1.  Kreative Has The Burden Of Proving Patent Infringement.................13

        2.  Kreative Cannot Reasonably Assert That Monoprice's Hub Infringes The Circular Conductors Claim Limitations ........................14

        3.  Monoprice's Hub Does Not Infringe The Hinged Cover Claim Limitation........................................................................................16

    B.  Kreative Had No Rule 11 Basis For Its Accusation of Infringement Of The '215 Patent.........................................................................................17

        1.  Requirements For Proving Infringement .............................................17

        2.  Monoprice's Hub Does Not Infringe The '215 Patent .......................18

        3.  Kreative's Own Prior Art Preclude It From Alleging Infringement Against Monoprice ........................................................19

    C.  Kreative Had No Rule 11 Basis For Its Copyright Infringement Accusation .......................................................................................................20

        1.  Requirements For Proving Copyright Infringement.............................20

**TABLE OF CONTENTS**
(*cont'd*)

**Page No.**

2. Monoprice's Hub Is Not Substantially Similar to Kreative's Copyright ............................................................21

D. Kreative's Unfair Competition Claims Are Entirely Preempted ....................22

V. CONCLUSION.........................................................................................................23

1

**TABLE OF AUTHORITIES**

2

**Page No(s).**

3

4

*Antonious v. Spaulding & Evenflo Cos.,*
   275 F.3d 1066 (Fed. Cir. 2002) ........................................................... 13

5

6

*United States Ex Rel. Berge v. Board of Trustees of Univ. of Ala.,*
   104 F.3d 1453 (4th Cir.1997) ............................................................... 23

7

*Berry Sterling Corp. v. Pescor Plastics, Inc.,*
   122 F.3d 1452 (Fed. Cir. 1997) ........................................................... 18

8

9

*Estate of Blue v. County of Los Angeles,*
   120 F.3d 982 (9th Cir. 1997) ............................................................... 11

10

11

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,*
   489 U.S. 141 (1989).............................................................................. 22

12

*Bus. Guides v. Chromatic Commc's Enter., Inc.,*
   119 FRD 685 (N.D. Cal. 1988), *aff'd in relevant part* 892 F.2d 802.
   (9th Cir. 1989) *aff'd* 498 U.S. 533 (1991) ........................................... 13

13

14

*Dolly, Inc. v. Spalding & Evenflo Cos.,*
   16 F.3d 394 (Fed. Cir. 1994) ............................................................... 14

15

16

*Elmer v. ICC Fabricating, Inc.,*
   67 F.3d 1571 (Fed. Cir. 1995) ............................................................. 17

17

18

*Eon-Net LP v. Flagstar Bancorp,*
   653 F.3d 1314 (Fed. Cir. 2011) ........................................................... 12

19

*Express, LLC v. Fetish Group, Inc.,*
   424 F. Supp. 2d 1211 (C.D. Cal. March 24, 2006)............................... 20

20

21

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
   535 U.S. 722 (2002).............................................................................. 14

22

23

*G.C. & K.B. Investments, Inc. v. Wilson,*
   326 F.3d 1096 (9th Cir. 2003) ............................................................. 11

24

*Gorham Mfg. Co. v. White,*
   81 U.S. (14 Wall.) 511, 20 L. Ed. 731 (1871) .................................... 17

25

26

*Harper House, Inc. v. Thomas Nelson, Inc.,*
   889 F.2d 197 (9th Cir. 1989) ............................................................... 20

27

28

*ICU Med., Inc. v. Alaris Med. Sys., Inc.,*
   558 F.3d 1368 (Fed. Cir. 2009) ........................................................... 12

# TABLE OF AUTHORITIES
### (*cont'd*)

Page No(s).

*Kouf v. Walt Disney Pictures & Television*,
  16 F.3d 1042 (9th Cir.1994) ............................................................. 20

*Laitram Corp. v. Rexnord, Inc.*,
  939 F.2d 1533 (Fed. Cir. 1991) ................................................... 13, 14

*Lee v. Dayton-Hudson Corp.*,
  838 F.2d 1186 (Fed. Cir. 1988) ......................................................... 18

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996) ................................. 14

*Medtronic, Inc. v. Advanced Cardiovascular Sys.*,
  248 F.3d 1303 (Fed. Cir. 2001) ......................................................... 14

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
  122 F.3d 1396 (Fed. Cir. 1997) ......................................................... 17

*Raylon, LLC v. Complus Data Innovations, Inc.*,
  700 F.3d 1361 (Fed. Cir. 2012) ......................................................... 12

*Richardson v. Stanley Works, Inc.*,
  597 F.3d 1288 (Fed. Cir. 2010) ......................................................... 18

*Selby v. New Line Cinema Corp.*,
  96 F. Supp. 2d 1053 (C.D. Cal. 2000) .................................................. 23

*Smith v. Jackson*,
  84 F.3d 1213 (9th Cir. 1996) ........................................................... 20

*Strattec Sec. Corp. v. General Automotive Specialty Co., Inc.*,
  126 F.3d 1411 (Fed. Cir. 1997) ......................................................... 14

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*,
  7 F.3d 1434 (9th Cir. 1993) ............................................................ 22

*Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.*,
  157 F.3d 1311 (Fed. Cir. 1998) .................................................... 17, 18

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
  208 F.3d 981 (Fed. Cir. 2000) .......................................................... 12

# TABLE OF AUTHORITIES
### (*cont'd*)

**Page No(s).**

## OTHER AUTHORITIES

17 U.S.C. § 101 .......................................................................................................... 20

35 U.S.C. § 102 ............................................................................................................ 7

35 U.S.C. § 171 .......................................................................................................... 19

Cal. Bus. & Prof. Code § 17200 ............................................................................... 23

Fed. R. Civ. P. 11 ................................................................................................ *passim*

1    Defendant Monoprice, Inc. ("Monoprice") seeks a finding from this Court that the
2    Complaint for patent infringement, copyright infringement, and unfair competition filed by
3    Kreative Power, LLC ("Kreative") does not comply with the requirements of Fed. R. Civ.
4    P. 11.  Monoprice requests that the Court assess appropriate sanctions, including an award to
5    Monoprice of attorneys' fees and expenses incurred defending this action.

## I. <u>INTRODUCTION</u>

7    Kreative had no basis to bring this suit, and despite being presented with strong
8    evidence of the flaws in its allegations, Kreative continues to assert its meritless claims.
9    Kreative sells a pyramid shaped power outlet hub called a POWRAMID ("Kreative's
10   Device").  This shape for a power outlet strip permits multiple electrical devices to share the
11   same electrical outlet or wall receptacle.  Kreative has wrongly accused Monoprice of
12   infringing intellectual property rights related to Kreative's Device including: (1) a utility
13   patent directed to the functional features of an electrical power outlet hub; (2) a design patent
14   directed to an ornamental design for a power outlet hub Kreative's Device; and (3) a
15   copyright for the Kreative Device's packaging.  Kreative further contends that (4) Monoprice
16   unfairly competes with Kreative under California State Law.

17   However, none of Kreative's asserted intellectual property rights can or does cover
18   the accused product, the Monoprice 6 Outlet Desktop Hub ("Monoprice's Hub").  For
19   example, to convince the U.S. Patent Office to grant its utility patent, Kreative amended its
20   claims to include a limitation requiring three separate "circular" conductors, not mere wires.
21   There are no circular conductors in the Monoprice Hub.   Rather, the Monoprice Hub
22   includes irregularly shaped wires, resembling a bowl of spaghetti more than the geometric
23   circles disclosed and claimed in the Kreative utility patent.

24   Kreative's design patent allegations are equally unfounded.  The Monoprice Hub has
25   a smooth, conical shape around the electrical outlets.  Kreative's design patent does not cover
26   this smooth, conical shape.  Instead, Kreative's design patent shows a series of vertical walls
27   jutting out from the body of the hub, like a set of dormer windows jutting out from a roof.
28   These prominent differences preclude infringement under the "ordinary observer" test for

design patents.  Kreative also cannot reasonably contend that this smooth, conical shape infringes its design patent because Kreative dedicated that shape to the public by filing a utility patent with the shape nearly six years before Kreative filed its design patent.  This means that if the Monoprice Hub allegedly infringes, Kreative's design patent is invalid because Kreative's own utility patent serves as prior art to its design patent. Moreover, the disclosure in the utility patent demonstrates that the conical shape and other design features of the hub were functional, and thus not protectable as an ornamental design.

Kreative's package design copyright claim is also frivolous.  Kreative's commonplace clear, plastic clamshell package is shaped to fit the hub itself.  Thus it is functional and not copyrightable.  Furthermore, Kreative's deposit specimen at the U.S. Copyright Office was not merely the clear, plastic package itself. The deposit specimen included a printed insert with colors, text, and Kreative's Hub.  In addition to the differences in the shape of the hubs, there is no substantial similarity to the overall packaging when the graphics, colors, printed text and arrangement of elements are concerned.  Even if Kreative may have some copyright protection directed to the graphics on the printed insert within the packaging, none of those graphics are used in Monoprice's packaging.

Finally, Kreative's claims of unfair competition are baseless and preempted by federal law.  For at least the reasons set forth above, Monoprice is not unlawfully using any protectable Kreative intellectual property.  Any similarities in the features of Monoprice's Hub and Kreative's Device are all admittedly functional and not protectable.  Kreative should not be permitted to seek to stifle this type of ordinary competition through baseless allegations of non-existing rights.

A proper pre-filing investigation by Kreative should have uncovered these deficiencies in its allegations.  Monoprice also informed of Kreative of these deficiencies in writing before Kreative filed suit, and again immediately after Kreative filed suit.  Kreative's counsel even admitted that it had been aware of many of these deficiencies and provided no explanation for how it plans to address them in this litigation.  Kreative's stubborn refusal to acknowledge these fatal flaws in its case makes Rule 11 sanctions appropriate.

## II.  FACTUAL BACKGROUND

**A.**     **Monoprice Repeatedly Notified Kreative That its Claims Were Baseless**

On April 8, 2014, Kreative sent a cease and desist letter to Monoprice demanding that Monoprice immediately cease selling the Monoprice Hub, due to alleged infringement of Kreative's utility and design patents.  Ex. A.[1]  In response, Monoprice sent Kreative a letter on April 29, 2014 outlining why Kreative's patent infringement claims were not applicable to the Monoprice Hub.  The letter explained that the utility patent required "circular" conductors not found in the Monoprice Hub, and that the design patent showed angular walls surrounding each outlet, unlike the smooth, conical walls of the Monoprice Hub.  Ex. B.  Kreative therefore had clear notice that its claims were baseless.

Nevertheless, on June 27, 2014, Kreative filed a Complaint for patent infringement, copyright infringement, and unfair competition in this Court.  Dkt. 1.  To avoid being forced to expend fees answering, on July 17, 2014, Monoprice again wrote Kreative, thoroughly detailing why all of its claims were unfounded.  Ex. C.  Kreative, however, stood firm and forced Monoprice to answer.  Dkt. 11.  The Answer again set forth Monoprice's position that Kreative's claims were baseless.  Counsel for the parties then conferred by phone on September 19, 2014.  Monoprice once again set forth its position and did not receive any explanation regarding why Kreative continued to assert its flawed claims. Monoprice's counsel informed Kreative's counsel that it would file this motion if the case were not dropped.  Monoprice's counsel also advised that Kreative's utility patent disclosed but did not claim the conical hub shape used by Monoprice, and thus dedicated that design to the public. Sganga Decl. at ¶1-2.  Counsel further explained that this dedication to the public precludes Kreative from asserting design patent infringement based on the much later filed design patent.  *Id.* at ¶2.  Kreative nevertheless continued to refuse to dismiss its claims.

/ / /

---

[1] All exhibits are to the concurrently filed Declaration of John B. Sganga, Jr. unless otherwise noted.

Pursuant to Rule 11, Monoprice served a copy of this motion on November 13, 2014, more than 21 days before filing this motion with the Court.  Kreative did not withdraw its Complaint in response.

**B.    Kreative's Asserted Intellectual Property Rights Are Limited in Scope**

**1.    Utility Patent: The '097 Patent**

Kreative's asserted utility patent, U.S. Patent No. 7,112,097, entitled "Compact Electrical Power Outlet System" ("the '097 patent"), issued on September 26, 2006.  *See* Ex. D ('097 Patent).  The patent describes and illustrates a conical-shaped outlet hub, and explains that its "compact shape" has a utilitarian advantage over traditional in-line power surge strips which must be "large and long in size" so the receptacles can be "spaced apart from each other" to accommodate bulky plugs.    Ex. D at 1:41-47.    Likewise, the "hold-down" knob at the top of the hub is described as useful to steady the hub while removing a plug.    Ex. D at 4:1-6 ("[T]he user can press down on the annular knob shoulder 27b while pulling up on one of the electrical plugs, thus holding the compact electrical power outlet system 10 in place.")  These features are shown in Figure 2, reproduced below.



*Fig. 2*

Kreative never tried to claim the conical shape for an outlet hub by itself.    Rather, its original patent claims called for an outlet system with a plurality of receptacles on the sides, a hold-down knob above the receptacles, and a power switch on top. Ex. H at 99-102 (original claims).    All original claims were rejected by the Patent Office as unpatentable.    Ex. H

1   at 66-74 (March 10, 2006 Office Action).

2          In response, Kreative cancelled most of the rejected claims, and amended the single

3   remaining claim to require not only the conical shape, but also that a translucent cover is

4   "hingedly attached to the base", and that the conductors within the hub are all "circular" in

5   shape.  Ex. D at 4:56 - 6:7.   Kreative argued that these added features were novel and the

6   basis for granting a patent:

7      Applicant has amended claim 15 to describe the invention in greater detail.  Applicant
       respectfully submits that claim 15, as amended, distinguishes over the prior art.
8
       First, claim 15 was amended to specify that the base is shaped like a cone.  None of the prior
9      art cited by Examiner provides a base having this configuration.

10     Claim 15 was also amended to specify that a power switch of the device is located on a hold-
       down knob surrounded by an annular knob shoulder, and wherein the power switch is adapted
11     to emit light when electrical power is received via the power input.  The power switch is
       covered by a movable cover adapted to cover the power switch, and wherein the cover is
12     hingedly attached to the base, also wherein the cover is adapted to transmit at least a portion
       of the light produced by the power switch.
13
       Finally, claim 15 was amended to specify that the electrical system includes a circular ground
14     conductor, a circular neutral conductor, a circular hot conductor, within the base.  This novel
       electrical system provides the power to the electrical receptacles of the base, within the
15     uniquely designed conical base.

16   Ex. H at 62.

17          As a result, the sole issued patent claim expressly requires three different "circular"

18   conductors.   These conductors are literally depicted as circular in shape in Figure 3 of the

19   '097 patent at 42, 44, and 46, and repeatedly described in the text of the patent as "circular":

20


Fig. 3

28   / / /

There is no other description of circular conductors in the '097 patent.  The term circular therefore has a plain an ordinary meaning that is readily understood.  There is no reasonable interpretation of the "circular conductor" limitations that covers wires of any shape that merely connect the receptacles.  Kreative argued to the Patent Office that its "circular" shaped conductors were part of a "novel electrical system" that distinguished the claim from the prior art. Ex. H at 62.  To now allege that wires of any shape satisfy this limitation merely because they fit within the base would read the "circular conductor" language out of the claim.

Claim 1, the only issued claim of the '097 patent, also requires a moveable cover "hingedly" attached to the base.  Figure 2 shows the moveable cover (26) and how it is hingedly attached (28).



This claim limitation also has a plain and ordinary meaning that is readily understood.  This limitation was also added to overcome the prior art and Kreative cannot credibly assert infringement without showing that the accused device satisfies the limitation.

## 2. Design Patent: The '215 Patent

Kreative's asserted design patent, U.S. Patent No. D653,215, entitled "Surge Protector With USB Charging Port" ("the '215 patent"), was not filed until 2011, nearly five years after the '097 patent *issued* on September 26, 2006, and almost six years after the '097 patent was filed.  See Ex. E ('215 Patent).  Unlike the '097 patent, the '215 patent does not contain a smooth, conical exterior design for the hub.  Rather, the '215 design patent shows and claims an ornamental design including vertical walls jutting out from the body of the hub on either side of each electrical receptacle, like a dormer window jutting out from a roof:

1
2
3
4
5
6
7



*Fig. 1*

8   Nor could the '215 patent claim the smooth, conical design shown in the '097 utility patent.

9   That smooth, conical design, as illustrated in the '097 utility patent is prior art to the design

10   patent under 35 U.S.C. § 102(b).  In fact the '097 patent was listed among the "references

11   cited" by the Patent Office on the face of the '215 design patent.

12   **3.** **Kreative's Copyright**

13   Kreative alleges it is the owner of copyright registration No. VA 0001908609.  See

14   Ex. F.  The deposit specimen submitted to the Copyright Office was a series of photographs

15   of the complete packaging for Kreative's commercial product, including clear plastic

16   packaging, inserts with text, color, and graphics, and the Kreative Device.  Two of these

17   photographs are reproduced below.

18
19
20
21
22
23
24
25
26
27
28





1  These photographs show the insert within the package, printed with graphics, including a

2  yellow-green and black design, and containing text describing the product, its features,

3  technical specifications, a trademark, a slogan "the new shape of power" and the

4  "POWRAMID" trademark.   The packaging is shaped to closely fit the Kreative Device, and

5  it cannot slide around within the package.  *Id.*  The package also contains space for the power

6  cord and a hanger for retail display of the package.

7  **C.**     **Kreative Promotes the Functionality of its Design**

8     The Kreative Device is sold and promoted on several websites.   Pages from those

9  websites were attached to the Complaint, and tout the functional aspects of the Kreative

10 design.   The smarthome.com website promotes the circular shape as "space saving" and

11 illustrates how many bulky plugs can all fit together:



21 Dkt. 1 Ex. F at 32-33.

22     The smarthome.com website also touts the "widely spaced receptacles" resulting from

23 the "pyramid shape," and the advantage of the clear plastic cover over the on-off switch:

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

**Overview**

- Widely spaced receptacles allow for six standard and non-traditional plugs
- Conical design offers a space saving, safe and stable base
- 15A resettable circuit breaker with LED surge protection indicator light
- Illuminated On/Off safety switch with protective cap
- Eight foot cord

**Essential Info**

Traditional surge protectors and power strips are designed to allow multiple devices to plug in to a single power outlet. However, these products don't account for the size that many bulky power adapters take up, leaving many of the receptacles blocked and unusable. The alternative pyramid shape of the POWRAMID allows for these large power adapters to fit side by side taking up less space while providing a reliable and sturdy base. The On/Off safety switch light located on the top and the LED indicator light on the side are illuminated to make certain your products are on and protected. The On/Off safety switch is also protected by a clear plastic cover to ensure that your connected products are not accidentally powered off if something were to come in contact with the unit. Should your unit experience a surge and shut down, a resettable circuit breaker is located on the side. For convenience, an eight foot long power cord gives you plenty of room to run your POWRAMID to the nearest outlet.

Dkt. 1 Ex. F. at 32.  Other advantages include "A transparent plastic cover that protects the power switch from falling objects and turning devices on or off unexpectedly" (*Id.* at 30) and "a conical, solid, space saving shape that keeps the receptacles together and off of [sic] ground" (*Id.* at 32).

**D.     Monoprice's Accused Hub**

Monoprice's Hub is a smooth, conical shaped hub for six outlets.   Its highly functional shape "allows access from all angles and allows the use of AC adapters in adjacent power outlet."  Dkt. 1 Ex. G at 37.




Any similarity with the Kreative Device is with respect to non-protectable elements that Kreative dedicated to the public several years ago.  Neither the Monoprice Hub itself nor its packaging infringe any enforceable right that Kreative has asserted in this lawsuit.

/ / /

/ / /

1   Monoprice's Hub has the following important distinguishing features from Kreative's
2   Device:

    1.  The Monoprice Hub's conductors are wires that are not "circular conductors";
        rather, they have no discernable geometry, as shown below:



    2.  The Monoprice Hub's cover is not hingedly attached to its base, rather it either
        snaps onto the base, or is entirely separated from the base.

 

    3.  The Monoprice Hub does not have a series of vertical walls jutting out from the
        body of the hub; rather, the Monoprice Hub features a smooth, even surface across
        the conical shape.



4.  The Monoprice Hub packaging insert lacks common graphics, color scheme, or layout with Kreative's packaging submitted with its copyright application or attached to the Complaint.



## III.  <u>RULE 11 REQUIREMENTS</u>

Rule 11 of the Federal Rules of Civil Procedure permits the court to impose sanctions on a party or its attorneys who present papers or arguments to the court where (1) the assertion lacks evidentiary or legal support; (2) the assertion is submitted for "any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," or (3) the pleader failed to make "an inquiry reasonably under the circumstances" before making the assertion, and such failure results in the filing of a frivolous pleading, motion, or other paper.  Fed. R. Civ. P. 11(b).  Whether a pleader is frivolous or improper is determined using an objective "reasonableness" standard.  *G.C. & K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003).  "Frivolous filings are those that are both baseless and made without a reasonable and competent inquiry."  *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997) (citations omitted).  The reasonableness standard is viewed from the perspective of a competent attorney admitted to practice before the district court. *Id.*  If the Court determines that a party has violated Rule 11, the Court may award to the prevailing party its reasonable expenses, including attorney's fees, incurred for bringing such a motion.  Fed. R. Civ. P. 11(c)(2).

/ / /

While regional circuit law governs Rule 11 sanctions in patent cases, *ICU Med., Inc. v. Alaris Med. Sys., Inc.,* 558 F.3d 1368, 1381 (Fed. Cir. 2009), the Federal Circuit has explained how Rule 11 applies to complaints for patent infringement:

> In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement.  Failure to do so should ordinarily result in the district court expressing its broad discretion in favor of Rule 11 sanctions, at least in the absence of a sound excuse or considerable mitigating circumstances.

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000).

Thus, prior to filing a patent infringement claim a party must first, at a minimum, "apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted." *View Eng'g, Inc.*, 208 F.3d at 986.

A party cannot rely on an unreasonable claim construction to justify its infringement allegations. "[T]here is a threshold below which a claim construction is 'so unreasonable that no reasonable litigant could believe it would succeed,' and thus warrants Rule 11 sanctions." *Raylon, LLC v. Complus Data Innovations, Inc.,* 700 F.3d 1361, 1368 (Fed. Cir. 2012).  The Federal Circuit has routinely affirmed Rule 11 sanctions based on frivolous claim constructions. *See id.* at 1365, 1368-1370 (finding frivolous a proposed construction of "pivotally mounted on said housing" to include fixed-mounted devices that the user pivots by moving its elbow); *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1328-29 (Fed. Cir. 2011) (finding proposed construction of "document" to include non-hard copy documents frivolous); *ICU Med.,* 558 F.3d at 1381 (finding frivolous a proposed construction of term "spike" to include non-pointed structures).

/ / /

/ / /

/ / /

A party is also subject to Rule 11 sanctions for the frivolous assertion of a patent claim it knows is invalid. "[S]anctions may be based on a single invalid legal or factual theory, even if other asserted theories are invalid." *Antonious v. Spaulding & Evenflo Cos.,* 275 F.3d 1066, 1075 (Fed. Cir. 2002) (*citing* Fed. R. Civ. P. 11(c)(1)(A)). The Federal Circuit has explained that:

> Advancing even a single invalid theory forces the defendant to respond and to do work it should not have been required to do. Each claim takes up the time of the legal system and the opposing side. A single claim…may occasion the expenditure of hundreds or thousands of hours, as opposing counsel try to verify or refute the allegations and theories.

*Antonious,* 275 F.3d at 1075 (citations omitted) (finding it proper to focus on a single patent claim in evaluating whether a Rule 11 violation occurred).

Rule 11 sanctions may also be imposed against a copyright plaintiff based on unjustified assumptions that a proper investigation would have corrected. *Bus. Guides v. Chromatic Commc's Enter., Inc.,* 119 FRD 685, 687 (N.D. Cal. 1988), *aff'd in relevant part* 892 F.2d 802, 812-14. (9th Cir. 1989) (holding that the Ninth Circuit applies an objective standard of "reasonable inquiry" into the facts for a represented party) *aff'd* 498 U.S. 533 (1991).

In sum, Rule 11 sanctions are appropriate here because Kreative has: (1) no reasonable basis for asserting either patent, copyright, or unfair competition against Monoprice for the accused Monoprice Hub; and (2) frivolously asserted these claims, including claims which it knows are invalid.

## IV.  KREATIVE HAD NO RULE 11 BASIS FOR ITS ACCUSATIONS

### A.  Kreative Had No Rule 11 Basis For Its Accusation of Infringement Of The '097 Patent

#### 1.  Kreative Has The Burden Of Proving Patent Infringement

Kreative has the burden of proving patent infringement by a preponderance of evidence. *Laitram Corp. v. Rexnord, Inc.,* 939 F.2d 1533, 1535 (Fed. Cir. 1991).  Proving

patent infringement is a two-step process.   First, the Court must construe the claims. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996).  Second, Kreative must prove that the accused device embodies every limitation of the claim, either literally or under the doctrine of equivalents.  *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).  Kreative, however, is estopped from arguing infringement under the doctrine of equivalents because the claim terms at issue were added to overcome the prior art.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002).

Literal infringement requires a showing that each element of the claim is identically present in the accused product.  *See Strattec Sec. Corp. v. General Automotive Specialty Co., Inc.*, 126 F.3d 1411, 1418 (Fed. Cir. 1997) (stating literal infringement exists only "when the properly construed claim reads on the accused device exactly").  An accused product that lacks even a single claim limitation does not literally infringe the claim.  *See Laitram Corp.*, 939 F.2d at 1535.  Further, an accused device that does not infringe an independent claim does not literally infringe any claims that depend from that independent claim.  *Medtronic, Inc. v. Advanced Cardiovascular Sys.*, 248 F.3d 1303, 1310 (Fed. Cir. 2001).

### 2.   Kreative Cannot Reasonably Assert That Monoprice's Hub Infringes The Circular Conductors Claim Limitations

Kreative has accused Monoprice of infringing the '097 patent.  However, Claim 1 of the '097 patent, the only claim of that patent, requires "***a circular ground conductor, a circular neutral conductor, a circular hot conductor***" Ex. D (emphasis added).

The '097 patent explains and illustrates the locations of these circular conductors in Figure 3:

/ / /

/ / /

/ / /

/ / /

/ / /

1
2
3
4
5
6
7
8
9



*Fig. 3*

10  As explained in the specification, the circular conductors allowed them to be "positioned in a

11  stacked arrangement within the base." '097 Patent at 4:43-48.  The use of the term "circular"

12  in the '097 patent is therefore consistent with the plain and ordinary meaning of the term.

13  Common definitions for "circular" include: "having the form of a circle," Ex. G (Merriam

14  Webster).  The patent never defines the term "circular" as having any definition other than its

15  plain and ordinary meaning.

16          Kreative had no reasonable basis to assert that Monoprice's Hub includes circular

17  conductors and therefore infringes.  Prior to filing suit, Kreative had the opportunity to

18  inspect publicly sold products.  Moreover, Kreative did not even need to inspect publicly sold

19  products because Monoprice expressly told Kreative that its products did not include circular

20  conductors.  Exs. B and C.  To avoid any doubt, Monoprice sent Kreative a picture of how the

21  conductors are arranged within the Monoprice Hub.  As shown below, Monoprice's Hub

22  features conductors–the green, black, and white wires–that are not circular:

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /



There is no reasonable claim construction under which Kreative could have believed that Monoprice's Hub's wire conductors, which have no discernable geometric shape, let alone a circular one, satisfy the "circular" limitations of Claim 1.  Therefore, Kreative could not have believed that Monoprice's Hubs infringe the '097 patent after a reasonable investigation.

### 3.    Monoprice's Hub Does Not Infringe The Hinged Cover Claim Limitation

The '097 patent also requires a "cover … hingedly attached to the base."  *Id.*  The '097 patent explains and illustrates the hinged cover claim in Figures 1 and 2:



The patent never defines the term "hingedly" as having any definition other than its plain and ordinary meaning.  The specification explains that "the cover 26 is attached to the base 12, preferably via a hinge 28 adjacent to the power switch 24."  '097 Patent at 3:16-18.  The use of the term "hingedly" in the '097 patent is therefore consistent with the plain and ordinary meaning of the term.

Kreative had no reasonable basis to assert that Monoprice's Hub included a hinged cover and therefore infringed.  Prior to filing suit, Kreative had the opportunity to inspect

publicly sold products.    As shown below, Monoprice's Hub features a non-hinging, removable cover:

 

Under no reasonable claim construction could Kreative have believed that Monoprice's Hub's covers are hingedly attached to the base, and thus, satisfy this limitation of Claim 1. Kreative's assertion that the Monoprice Hubs infringe the '097 patent is thus sanctionable.

**B.    Kreative Had No Rule 11 Basis For Its Accusation of Infringement Of The '215 Patent**

### 1.    Requirements For Proving Infringement

In determining if a design patent is infringed, a court must first construe the design patent's claim. *Elmer v. ICC Fabricating, Inc.,* 67 F.3d 1571, 1577 (Fed. Cir. 1995).  Next, the fact-finder must determine whether the accused design infringes the patent, first employing the ordinary observer test:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham Mfg. Co. v. White,* 81 U.S. (14 Wall.) 511, 528, 20 L. Ed. 731 (1871).  The fact-finder is to determine whether "the patented design as a whole is substantially similar in appearance to the accused design."  *OddzOn Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1405 (Fed. Cir. 1997).  "In determining this overall similarity of design, the ordinary observer must be deceived by the features common to the claimed and accused designs that are ornamental, not functional."  *Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.,* 157 F.3d 1311, 1323 (Fed. Cir. 1998).  In other words, "it is the non-functional, design aspects that are

1    pertinent to determinations of infringement."  *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186,

2    1188 (Fed. Cir. 1988).  If the accused device is not substantially similar based on the design

3    aspects, the inquiry ends and the accused device does not infringe.

4        2.    **Monoprice's Hub Does Not Infringe The '215 Patent**

5           Monoprice's Hub does not infringe the '215 patent under the "ordinary observer" test.

6    As shown below, the Monoprice Hub has a smooth, conical shape around the electrical

7    outlets.

 

Fig. 6

16   In stark contrast, the '215 patent shows that each electrical outlet has a series of vertical walls

17   jutting out from the body of the hub.  These differences preclude any ordinary observer from

18   thinking that the designs are substantially the same, and should have precluded Kreative from

19   filing this baseless suit.

20         Moreover,  any  alleged  similarities  in  the  designs  are  functional.   Design  patent

21   protection  does  not  extend  to  functional  features.   *See Unidynamics Corp.*, 157  F.3d

22   at 1323-24 (Fed. Cir. 1998).  In determining whether a design is functional, the Federal

23   Circuit  has  stressed  looking  at  "whether  there  are  any  concomitant  utility  patents"  and

24   "whether the advertising touts particular features of the design as having specific utility."

25   *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed. Cir. 1997).  Here, as

26   discussed  above,  Kreative  asserts  its  accompanying  utility  patent  in  this  suit.   This

27   demonstrates that Kreative's design is functional.  *See Richardson v. Stanley Works, Inc.*, 597

28   F.3d 1288, 1293-94 (Fed. Cir. 2010) (factoring  out  functional  components  from  design

patent); *see also* 35 U.S.C. § 171 (design patents are directed to ornamental design). Additionally, advertising for Kreative's product touts the utilitarian aspects of its device's design. Dkt. 1 Ex. F at 30.  The advertising states:

> With 6 power outlets on tap around the conical design power strip, each electrical device can be plugged in without worry of blocking other outlets…A transparent plastic cover protects the power switch from falling objects and turning devices on or off unexpectedly.

*Id*.  This advertising confirms that distributing the six outlets around the conical shape is functional, not ornamental.  Given the obvious visual differences in the ornamental features of the products, an ordinary observer could not conclude that Monoprice's Hub infringes the '215 patent.

    **3.**    <u>**Kreative's Own Prior Art Preclude It From Alleging Infringement Against Monoprice**</u>

Yet another reason that Kreative's infringement allegations are baseless is that Kreative dedicated the smooth conical shape to the public in its asserted utility patent.  As shown in the '215 patent, the claimed design has dormer window shapes around the receptacles:



*Fig. 1*

The '215 patent lists the '097 patent as one of the "References Cited" during prosecution. Dkt. 1-1 at 12.  This is because the patent office cited the '097 patent as prior art during prosecution.  Ex. I at 140.  Figure 1 of the '097 patent illustrates a smooth conical shape between receptacles, similar to the allegedly infringing Monoprice Hub:

 

*Fig. 1*

It is frivolous to admit, on one hand, that the smooth, conical shape of the '097 patent is prior art, while alleging, on the other hand, that the smooth, conical shape of the Monoprice Hub infringes.

**C.      Kreative Had No Rule 11 Basis For Its Copyright Infringement Accusation**

      **1.      Requirements For Proving Copyright Infringement**

To prevail on its copyright infringement claim, Kreative must show that it owns the work in question and that Monoprice copied protected expression from Kreative's works without authorization. *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996). The second prong, copying, is demonstrated by showing (1) circumstantial (or other) evidence of defendant's access to the protected works, and (2) substantial similarity between the copyrighted and accused works. *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1043 n. 2 (9th Cir.1994).

Kreative's registered copyright sets the scope for the substantial similarity comparison. *See Express, LLC v. Fetish Group, Inc.*, 424 F. Supp. 2d 1211, 1218-19 (C.D. Cal. March 24, 2006).   Copyright protection, however, does not extend to the utilitarian aspects of a useful article.   17 U.S.C. § 101.   The substantial similarity analysis cannot be based on unprotectable aspects of Kreative's work. *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 207-08 (9th Cir. 1989).

/ / /

/ / /

2.      **Monoprice's Hub Is Not Substantially Similar to Kreative's Copyright**

Kreative attached a picture to the Complaint with both the Monoprice Hub packaging and the Kreative Design packaging:



Dkt 1. Ex. H at 43.  Both packages have a form-fitting clamshell design, and cardboard inserts with text and graphics.  But these common features are functional and cannot be protected under copyright.

The details of the packaging also reveal several differences.  The shape of the package around the products is different, with the dormer windows of the Kreative packaging differing from the smooth, conical shape of the Monoprice packaging.  Kreative's registration also more clearly shows that the background for the Kreative insert is both patterned with dots, features a gradient from black to grey, and has bright yellow graphical element across the top:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /



Ex. F.  In contrast, the Monoprice packaging merely has a solid black background.   In sum, there are few, if any, truly protectable aspects of the packaging design, and none that are similar between the packages.

**D.**     **Kreative's Unfair Competition Claims Are Entirely Preempted**

A violation of federal patent law or federal copyright law–without more–cannot serve as the bases for unfair competition.  *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1439-41 (9th Cir. 1993).  "Federal patent and copyright laws limit the states' ability to regulate unfair competition." *Id.* at 1439. "Where state law offers 'patent-like protection for ideas deemed unprotected under the present federal scheme, [state law] conflicts with the strong federal policy favoring free competition in ideas.'" *Id.* (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 168 (1989)).  Thus, to avoid preemption, a state-law claim must be "qualitatively different from a copyright or patent infringement claim." *Id.* at 1440. This requires the state-law claim "contain[ ] an element not shared by the federal law," *id*. at 1439, such as an alleged breach of fiduciary duty, breach of a confidential relationship, or palming off of the defendant's products as those of its competitor, *id*. at 1441.

Kreative alleges no such facts.  In Count VI of its Complaint, Kreative alleges a claim for Unfair Competition under Cal. Bus. & Prof. Code § 17200, contending that Monoprice willfully misappropriated Kreative's intellectual property.   It alleges that Monoprice's

business acts are unlawful under both federal and state statutory law.  However, there are no intellectual property allegations other than the patent and copyright claims.  Kreative also does not plead any facts to support a claim other than patent or copyright infringement.  Kreative's unfair competition claim therefore rises and falls with its patent and copyright infringement allegations.

Furthermore, preemption applies even where a plaintiff's underlying claim fails. *See Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1058-59 (C.D. Cal. 2000) ("[T]he shadow actually cast by the Act's preemption is notably broader than the wing of its protection.") (quoting *United States ex rel. Berge v. Board of Trustees of Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir.1997)).  For the reasons set forth above, however, Monoprice does not infringe any of Kreative's asserted intellectual property rights.  Kreative thus had no reasonable basis to allege unfair competition.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, Monoprice respectfully requests that the Court assess appropriate sanctions, including requiring Kreative and/or its counsel pay Monoprice's reasonable attorneys' fees and costs of its defense.

Respectfully submitted

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: <u>November 13, 2014</u>         By:  <u>s/John B. Sganga, Jr.</u>
                                                   John B. Sganga, Jr.
                                                   Brian C. Claassen
                                                   KNOBBE, MARTENS, OLSON & BEAR, LLP
                                                   2040 Main Street, Fourteenth Floor
                                                   Irvine, CA  92614
                                                   Telephone:  (949) 760-0404
                                                   Facsimile:  (949) 760-9502
                                                   john.sganga@knobbe.com
                                                   brian.claassen@knobbe.com

                                                   Attorneys for Defendant and Counterclaimant
                                                   MONOPRICE, INC.

**<u>CERTIFICATE OF SERVICE</u>**

I am a citizen of the United States of America and I am employed in Irvine, California.  I am over the age of 18 and not a party to the within action.  My business address is 2040 Main St., 14th Floor, Irvine, California 92656.  On November 13, 2014, I served the within **MONOPRICE, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**on the parties or their counsel shown below:

**VIA ELECTRONIC MAIL:**

Otto O. Lee
Kevin Viau
Bonnie J. Wolf
INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113
olee@iplg.com
kviau@iplg.com
bonniewolf@iplg.com

Counsel For Plaintiff and Counterdefendant
Kreative Power, LLC

I certify and declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.

Executed on November 13, 2014, at New York, New York.

*s/ John B. Sganga, Jr.*
John B. Sganga, Jr.

1893254